Cite as 2020 Ark. App. 247

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-19-387

| | |
|---|---|
| FRANKLIN SEARS<br><br>APPELLANT<br><br>V.<br><br>CITY OF HOT SPRINGS; HOT SPRINGS CIVIL SERVICE COMMISSION; AND JASON STACHEY, INDIVIDUALLY AND AS CHIEF OF POLICE<br><br>APPELLEES | **Opinion Delivered:** April 22, 2020<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-18-989]<br><br>HONORABLE LYNN WILLIAMS, JUDGE<br><br>REVERSED AND REMANDED |

## BART F. VIRDEN, Judge

The Hot Springs Civil Service Commission (Commission) affirmed the disciplinary action taken by Jason Stachey, chief of the Hot Springs Police Department (HSPD), with regard to appellant Franklin Sears, a police officer who was terminated after continually receiving an "unsatisfactory" score on a physical-agility test. Sears appealed the Commission's decision to the Garland County Circuit Court, which affirmed the Commission's decision. Sears now appeals to this court, arguing that the City[1] wrongfully terminated him when it failed to follow its own mandatory policy. According to Sears, (1) the City's doctor did not first determine whether he was medically able to pass the physical-agility test, (2) the City provided him with a physical therapist, rather than a "certified fitness

---

[1]Appellees will be referred to collectively as "the City."

trainer," and (3) the City's doctor did not perform a fitness-for-duty evaluation. Sears argues that we should reverse the circuit court and remand for a "determination of money damages." His arguments have merit; therefore, we reverse and remand.

## I. *HSPD's Rules and Regulations*

All employees in any police department shall be governed by rules and regulations set out by the chief of the police department after those rules and regulations have been adopted by the governing bodies of their respective municipalities. Ark. Code Ann. § 14-51-302 (Repl. 2013). On February 15, 2017, the Commission unanimously approved revisions to the HSPD's policy on physical fitness presented by Chief Stachey. On February 28, the HSPD distributed to its police officers the revised version of its rules and regulations on physical fitness (2012.2.5), including changes to its physical-agility testing.

Revised 2012.2.5 provides that all certified police officers are required to participate in a wellness/physical-fitness program and complete physical-agility testing twice a year. The rules and regulations provide that a time in excess of twelve minutes and thirty seconds, or an incomplete test, will be deemed "unsatisfactory" and constitute a violation of the policy. If an officer receives an "unsatisfactory" score on the physical-agility test, the following procedure applies:

1. The officer will be given written counseling for violation of this policy. The written counseling will direct the officer to place himself/herself on a fitness plan. The Officer will then have 30 days to successfully complete the agility test.

2. If the officer does not successfully complete the agility test within the allotted 30 days, the officer shall be scheduled an appointment with a physician chosen by the department.

2

3. If the physician determines the officer to be medically able, the officer will be required to attend a consultation meeting with a certified fitness trainer where the officer will receive a fitness and dietary plan to follow for 60 days. The officer will meet with the fitness trainer again after following the plan for 30 days to track his/her progress and for further consultation. The officer must then successfully complete the agility test within that 60 day period following their initial consultation with the fitness trainer.

4. If the officer does not successfully complete the agility test within the 60 day period, the officer will be scheduled a follow-up appointment with the physician to assess their fitness for duty.

5. The Chief of Police will make a final determination concerning the officer's continued employment based on the officer's fitness for duty evaluation and report from the physician.

## II. *Background*

On May 13, 2017, Sears received a letter from Lt. Larry Patrick informing him that he had received an "unsatisfactory" score on the physical-agility test taken on May 13 because he did not complete the sit-ups portion. He was given thirty days to successfully complete the test. On June 12, Lieutenant Patrick received a letter from Cpl. Eric Wacaster informing him that Sears had "failed" the second test because he was not able to complete any sit-ups.

On August 8, Capt. William Hrvatin sent Sears a letter stating that he had been "placed on a remedial dietary and fitness plan with a doctor and fitness trainer" and that he would be required to complete the third physical-agility test sixty days after his second test. The third test was scheduled for August 25. On August 25, Chief Stachey sent Sears a letter placing him on administrative leave with pay because he had failed to complete the third consecutive physical-agility test. Sears was told that he would be contacted regarding his next appointment with Dr. English for a fitness-for-duty evaluation.

3

On September 25, Sears received a letter from Chief Stachey suspending him without pay for two days and advising him that he must successfully complete a fourth physical-agility test within forty-five days after the suspension, or his employment will be terminated. Sears received another unsatisfactory score. Chief Stachey permitted Sears to take a fifth physical-agility test, but his score was still unsatisfactory.

On December 12, Chief Stachey wrote that Sears had been "in continuous violation of the [HSPD] physical fitness policy for the past (7) seven months despite providing [him] with an abundance of resources, tools and time." He further wrote that "[a]fter (5) five failed opportunities," Sears was terminated effective immediately. Sears requested a hearing.

III. *Hearing Testimony*

On January 10, 2018, a hearing was held before the Commission. Chief Stachey testified that the purpose of revising the HSPD's physical-agility test in February 2017 was to make it more efficient than the 2012 test and more related to a police officer's everyday job duties. Lieutenant Patrick testified that he had assisted in the development of the original physical-agility test in 2012 and in its subsequent revision.

According to Chief Stachey, the revised test is much shorter, and the frequency with which the test is administered has been reduced to twice a year, instead of quarterly. He testified that the new hires were required to complete the test in five minutes or less, while current employees like Sears had to complete it in under twelve minutes and thirty seconds. Chief Stachey said that, whereas the 2012 test could negatively impact promotions and job evaluations, the revised test called for termination if an officer "fails" the test multiple times.

4

Chief Stachey described the revised physical-agility test. The test consists of running, jogging, walking, or crawling seven hundred yards. There is also a twenty-two-inch sawhorse that can be either leapt or stepped over. Additionally, the officer must complete fifteen push-ups and fifteen sit-ups, which Lieutenant Patrick characterized as "the basics." There is also a requirement that the officer drag an eighty-pound dummy ten yards.

Chief Stachey testified that, of 105 sworn personnel in the department, only two officers—one of whom was Sears—failed to complete the test.[2] Chief Stachey further testified that Sears had been on the force for twenty-one years and had most recently served as a school-resource officer. He said that Sears had never been "written up" for an inability to perform his job. Chief Stachey testified that he had afforded Sears every opportunity to pass the physical-agility test and did not want to terminate Sears.

The City introduced an exhibit into evidence consisting of a sheet of paper containing typewritten information under two separate dates with what appears to be Dr. Timothy English's signature at the bottom. Under the first dated portion, it indicates that Sears was seen on June 16 after he had received an unsatisfactory score on the second test. The notation by Dr. English reads as follows:

HEIGHT: 70"

WEIGHT: 310.4LBS

BP: 130/78

STATES UNABLE TO MEET POLICE DEPT STANDARDS FOR EMPLOYMENT

---

[2]Chief Stachey said that a few other officers produced medical documentation indicating that they could not complete the test due to a medical condition.

UNABLE TO DO SIT-UPS

RECOMMENDATIONS: WEIGHT LOSS AND CORE STRENGTH TRAINING.

Chief Stachey acknowledged that Dr. English's report did not specifically state whether Sears was able to perform the physical-fitness test one way or the other. Chief Stachey said that he inferred that Sears was able because the report did not say that Sears was not able. Later, Chief Stachey conceded that the report was "incomplete." On the same sheet of paper under the date of July 18, which would have been after Sears had received an unsatisfactory score on the third test, the notation by Dr. English provides:

30 DAY FOLLOW UP WITH PHYSICAL THERAPIST, Robert Jordan.

Note states, I met with Frank this afternoon for his 30 day follow up. He reports he has lost 8# and is working out 3-4 times per week. He says he stretches every morning but is frustrated that his hips and low back seem to tighten back up. He is c/o today of LB soreness. We discussed his diet. He states he is doing a low carb, high protein diet. He states he is having difficulty getting off Diet Mt. Dew (2/day).

We discussed eating small meals 6x/day with goal of maintaining constant insulin levels and continual calorie burn. He needs to drink more water. I also recommend that he warm up with walking or jogging in place prior to doing his stretches. Also he should do stretches at the end of his workout, rather than at the beginning. In general, I think Frank is making an effort to improve his condition.

Lieutenant Patrick testified that the portion of the policy calling for consultation with a certified fitness trainer was something offered to an officer to ensure that the HSPD was doing its due diligence to help officers get on track with their fitness and health. Chief Stachey testified that when the revised policy was created, he and others were charged with determining what a "certified fitness trainer" is but that he did not want to speculate about the difference between a physical therapist and a certified fitness trainer.

6

Asked about Robert Jordan, Chief Stachey said that his understanding was that Jordan is certified and licensed as a physical-fitness trainer, but he conceded that he did not have any documents stating as much. Chief Stachey said that he had been told of Jordan's qualifications by Vance Dobyns, chief administrator of the hospital where Jordan works. Lieutenant Patrick said that his understanding was that Jordan has "a smorgasbord of certification, whether you call him a physical therapist or a fitness trainer."

Chief Stachey said that, if Sears had brought him medical records indicating that he could not complete the test, Sears would not have been required to take it until Chief Stachey received a doctor's note saying that he could. A record from Chiropractic Health Clinic dated September 29 from Dr. Larry Grinder was introduced. It stated the following:

> Mr. Sears has been a patient of mine for approximately 20 Years. He has always had lower back instability in those 20 years. He now has some degeneration in his lower spine. This has restricted his normal range of motion not allowing him the flexibility he once had. Usually 2 to 3 spinal adjustments (spinal manipulation) get him back on track over the years. I feel his overall health is good, but he has weakness in his lower spine.

Asked about Dr. Grinder's report, Chief Stachey said that the report did not indicate anywhere that Sears was medically unable to take the test. Chief Stachey pointed out that Sears had been able to pass the physical-agility test in the past, even under the more rigorous standards. He said that there are currently officers who are as big as or bigger, and older, than Sears who have completed the test.

Chief Stachey said that, when he established the revised physical-agility test, he had sat down with Dr. English and explained what was needed. He said that Dr. English even came to the track to see the testing so he could understand what was being asked of the

7

officers. He testified that Dr. English was also given a copy of the HSPD's rules and regulations on physical fitness. The City introduced into evidence Dr. English's report after Sears had received an unsatisfactory score on the third test. On a sheet of paper dated September 7 with what appears to be Dr. English's signature at the bottom, the doctor indicates, "States unable to do set ups [sic]" and

> [d]oes not meet minimal standards of Hot Springs Police Department per Physical Fitness standard 2012.2.5. Frank Sears has lost 10# since his initial visit on 6/16/17. States he has never been able to do set-ups [sic] but has not affected his job performance.

Chief Stachey said that he was "very disappointed in [Dr. English's] report and felt it was lacking the information we were looking for." He said that he did not know what a fitness-for-duty evaluation required from a medical standpoint but that he needed to know whether there was "something definitively wrong" with Sears that prevented him from being able to pass the test and whether Sears was able to perform the duties of a police officer. Chief Stachey conceded that he had made his final decision without a fitness-for-duty evaluation because the doctor's report was inconclusive and incomplete.

At the conclusion of the hearing, the Commission affirmed the disciplinary action taken by Chief Stachey. Sears appealed that decision to the circuit court, which found that the "HSPD Policy 2012.2.5 was properly applied as to the Petitioner, and that its requirements were followed." Sears filed a timely appeal to this court.

## IV. *Standard of Review*

Arkansas Code Annotated section 14-51-308 (Supp. 2019) provides that an employee has a right to appeal from the decision of the Commission to the circuit court.

Ark. Code Ann. § 14-51-308(e)(1)(A). The circuit court proceeding is in the nature of an original action. *City of Little Rock v. Muncy*, 2017 Ark. App. 412, 526 S.W.3d 877. The circuit court does not merely review the decision of the Commission for error but instead conducts a de novo hearing on the record before the Commission and any additional competent testimony requested by either party. *Id.*; Ark. Code Ann. § 14-51-308(e)(1)(C).

We review the findings of the circuit court to determine whether they are clearly against the preponderance of the evidence. *Muncy, supra.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *City of Little Rock v. Hudson*, 366 Ark. 415, 236 S.W.3d 509 (2006). We give due deference to the circuit court's superior position to determine the credibility of witnesses and the weight to be accorded their testimony. *Id.*

V. *Discussion*

While Sears raised three points for reversal, set forth in the opening paragraph,[3] we address only Chief Stachey's final decision to terminate Sears. On this point, Sears argues that Dr. English did not determine his fitness for duty. Sears states that all of the undisputed evidence plainly shows that, although he was unable to do sit-ups, he was fit for duty in that he had performed his job functions without issue for twenty-one years.

We have no comment on whether Sears was actually fit for duty, as he urges, but we do agree that the City failed to follow its own policy, specifically, the steps to be taken when

---

[3]Sears also argues that he had a contractual right to expect that the policy would be followed. Because Sears did not raise this argument below to preserve it for appellate review, we do not address it. *Amason v. City of Calion*, 2019 Ark. App. 106, 573 S.W.3d 30.

9

an officer performs unsatisfactorily on the revised physical-agility test. The policy provides that the chief of police will make a final decision on termination "*based on* the officer's fitness for duty evaluation and report from the physician." Clearly, Dr. English did not perform a fitness-for-duty evaluation—he merely recited what he had been told by Sears and did not form a medical opinion. Chief Stachey admitted that what the doctor had compiled was "incomplete" and "inconclusive." Despite the policy's express language requiring a fitness-for-duty evaluation on which to base a final decision, Chief Stachey simply terminated Sears. We conclude that the circuit court clearly erred in finding that the City met the requirements set forth in its physical-fitness policy. Accordingly, we reverse and remand for a hearing pursuant to section 14-51-308(f).

Reversed and remanded.

HARRISON and VAUGHT, JJ., agree.

*Kezhaya Law PLC*, by: *Matthew A. Kezhaya*, for appellant.

*Brian W. Albright*, City Attorney, for appellees.

10